IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-01118-WDM-PAC

MARGARET MIALES, et al.,

    Plaintiffs,

v.

McDONALD'S RESTAURANTS OF COLORADO, INC.,

    Defendant.

## AMENDED ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

In accordance with a request of a party, the following order shall be published:

This matter is before me on the motion for summary judgment filed by defendant McDonald's Restaurants of Colorado, Inc. on March 2, 2005.  I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required.  For the reasons that follow, the motion will be granted in part.

### Background

In the light most favorable to the plaintiffs, the facts of this case are as follows. On September 6, 2002, plaintiff Margaret Miales, an African-American, and her four children went to a McDonald's restaurant and attempted to place an order at the drive-through window.  About half-way through their order, the drive-through attendant inexplicably stopped taking their requests, so the Miales family parked and went inside.

Immediately upon entering, Ms. Miales asked to speak with the manager, and was referred to the swing manager, Susan Cox (Cox). Ms. Miales generally complained to Cox about the drive-through attendant, and at some point, intending to request service, Ms. Miales asked, "Well . . . are you going to do something about it?" Cox apparently did not do anything that satisfied Ms. Miales, because sometime thereafter, Ms. Miales asked Cox, "Why are you being a bitch to me?" to which Cox responded, "Yeah? Well at least I'm not a black bitch," and began walking away. When Ms. Miales asked Cox "Why would you say this to me?" Cox responded, "Go look in a mirror." Shocked and humiliated, the Miales family left the restaurant without ordering. They later drove to another McDonald's in town, and complained to a supervisor about the incident. When this supervisor offered the family free food, Ms. Miales refused.

Based on these facts, the Miales family brings two claims: (1) racial discrimination in violation of 42 U.S.C. § 1981; and (2) intentional infliction of emotional distress under Colorado tort law.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).  Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

### Discussion

1.   Section 1981

§ 1981 provides that people of all races "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," and prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981; *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1532 (10th Cir. 1995).  Accordingly, an essential element of a § 1981 claim is "an actual loss of a contract interest." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101 n.1 (10th Cir. 2001).

McDonald's presents several arguments why the Miales family's § 1981 claims must fail.  First, McDonald's argues that because there is no indication that Ms. Miales's children ever intended to enter into a contract themselves, their claims cannot stand.  The Miales family never addresses this argument, but the undisputed facts indicate that if any purchase was intended at all,[1] Ms. Miales clearly intended to buy food for her children.  Accordingly, summary judgment is inappropriate on the children's

---

[1] As discussed below, whether Ms. Miales actually intended to purchase food is an issue of material fact in this case.

3

§ 1981 claims because they were third-party beneficiaries. *See O'Conner v. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir. 1992) ("An intent to benefit the third party must be apparent from the construction of the contract in light of all surrounding circumstances . . . .").

Second, McDonald's argues that Ms. Miales cannot prove the loss of a contract interest because she never specifically requested service. I disagree. First, given the context of the discussion, a reasonable jury could conclude — as at least one eyewitness apparently did (*see* Katz Dep., Ex. 4 to Pl.'s Resp., at 16) — that Ms. Miales was asking for service when she asked Cox, "Well . . . are you going to do something about it?" But more importantly, I conclude that a specific purchase request is not required; rather, specific intent to make a purchase is sufficient. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (affirming summary judgment against § 1981 plaintiffs because there was no evidence that they had more than a "general interest in the merchandise" or that they would have attempted a purchase if not interfered with); *Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192 (D. Kan. 1999) (dismissing § 1981 claim because there was no evidence that plaintiff "intended to purchase a car during her visit") (cited with approval by the Tenth Circuit in *Hampton*, 247 F.3d at 1106 n.3).[2] Since there is clearly a question of fact in this case whether Ms. Miales had a

---

[2] In support of their argument that a specific request is required, McDonald's cites a footnote from *Jackson v. Tyler's Dad's Place, Inc.*, which states: "Plaintiffs' never asked to be seated . . . and therefore never sought to enter a contractual relationship." 850 F. Supp. 53, 56, n.6 (D.D.C. 1994). I find this argument unpersuasive. The focus of the opinion in that case was the plaintiff's complete lack of evidence of discriminatory intent. To the extent that the court's one-sentence footnote can be read as an alternative holding that a failure to specifically request service *necessarily* defeats a § 1981 plaintiff's claim, I disagree. Were that the law, a racially motivated establishment

4

settled intent to purchase food before she was deterred from doing so, summary judgment is not appropriate on this ground.

Third, McDonald's argues that Ms. Miales's claim must fail because she was never told that she would not be served, and after the incident with Cox, she voluntarily left the restaurant when other employees nearby may have taken her order. Further, McDonald's emphasizes Ms. Miales's later refusal of service at the second restaurant. McDonald's relies on *Bagley v. Ameritech Corp.* 220 F.3d 518 (7th Cir. 2000) (holding that one employee's racially motivated refusal to wait on a black customer did not establish a § 1981 violation because another employee clearly was willing to wait on him). To the extent *Bagley* stands for the proposition that a § 1981 claim necessarily fails if the plaintiff voluntarily leaves after being subjected to racial discrimination, but not specifically denied service, I disagree and conclude that the Tenth Circuit would as well. *See Hampton*, 247 F.3d at 1091 (affirming a jury verdict against Dillard's Department Stores, even though the plaintiff left voluntarily without being told that the store would not complete her transaction and while employees who may have assisted her were nearby); *see also Kelly v. Bank Midwest, N.A.*, 161 F. Supp. 2d 1248 (D. Kan. 2001) (holding that the fact that a black plaintiff eventually obtained a loan from the defendant bank did not preclude § 1981 claim); *Bagley*, 220 F.3d at 522 (Cudahy, J. dissenting) (rejecting the majority's "unrealistic and possibly dangerous" reasoning because it forces customers to either persevere in the face of racial discrimination, or "forfeit [their] rights as a customer."). Moreover, *Bagley* is distinguishable because, in

---

could deter most minority customers with impunity by simply acting preemptively.

5

that case, immediately after the first employee said "I will not serve him," she handed a brochure to a second employee who clearly would serve the plaintiff. *Id.* at 520. Here it is not so clear that other employees at the first restaurant would serve Ms. Miales, and the offer at the second McDonald's is separated in time and place. In any case, as *Hampton* notes, the issue is not whether there was subjective intent to prevent service. The relevant questions are whether there was intent to discriminate and whether this discrimination interfered with or impaired the obtainment of service. 247 F.3d at 1106-07. I conclude that a genuine issue of fact remains on these two questions.

Fourth, McDonald's argues that Ms. Miales's claim fails because she cannot show that her race caused the alleged denial of service. To the extent that McDonald's argues that Cox must have intended to deny Ms. Miales service, I disagree; this argument was specifically rejected by the majority in *Hampton*. There, the dissent argued that a § 1981 claim cannot stand unless there is an intent to interfere with a contract. *Hampton*, 247 F.3d at 1121 (Anderson, J. dissenting). In response, the majority emphasized that "the proper focus is on whether the defendant had the intent to discriminate on the basis of race, and whether that discrimination interfered with the making or enforcing of a contract." *Hampton*, 247 F.3d at 1106-07. Thus, although the majority agreed that there was no evidence of intent to interfere with a contract, this fact was not fatal to plaintiff's § 1981 claim. *Id.* In this case, there is no doubt that Ms. Miales has produced enough evidence that a reasonable jury could find that both of the *Hampton* factors are satisfied. This is all that is required.

Finally, McDonald's argues that even if Ms. Miales's § 1981 claim is otherwise valid, she cannot collect punitive damages because Cox is not a manager with the type of authority required to impute vicarious liability to McDonald's.  *See Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257 (10th Cir. 1995) (holding that training instructor did not have enough stature and authority within large company to support vicarious liability against the employer).

I disagree.  Such questions are necessarily "fact-intensive inquir[ies]," and are therefore normally the province of the jury.  *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 421, 543 (1999).  In this case, Ms. Miales's evidence indicates that Cox was often the highest level authority in the restaurant (Stahl Dep., Ex. 11 to Pl.'s Resp., at 89-91), and comments allegedly made by Cox indicate that she had the authority to fire employees (Miales Dep., Ex. 2 to Pl.'s Resp., at 202).  This evidence is sufficient for a jury to find that Cox possessed enough authority to justify vicarious liability.  *See E.E.O.C. v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1247 (10th Cir. 1999) (noting that "authority to 'hire, fire, discipline or promote, or at least to participate in or recommend such actions,' is an indicium of supervisory or managerial capacity") (quoting *Miller v. Bank of Am.* 600 F.2d 211, 213 (9th Cir. 1979)).  Accordingly, summary judgment on Ms. Miales's § 1981 claim is not appropriate.

2.  Outrageous Conduct

The Miales family's second claim is one for intentional infliction of emotional distress under Colorado tort law.  To prevail on this claim she must meet an extremely high standard — "[l]iability has been found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970).

The Miales family bases its claim on the conduct supporting their § 1981 claim, and also on allegations that McDonald's engaged in various underhanded acts such as conducting a sham investigation, destroying and fabricating evidence, and maliciously accusing the family of improper behavior.  To the extent that the Miales family relies on claims made or questions asked by McDonald's during preparation for litigation, these actions are absolutely privileged.  *See Buckhannon v. U.S. West Commc'ns, Inc.*, 928 P.2d 1331 (Colo. Ct. App. 1996).  And given the context of Cox's statement — a response to Ms. Miales's "bitch" question, her conduct, although highly inappropriate, is the type of single insult or unkind act that is not normally considered sufficient to constitute outrageous conduct.  *See* Colo. Jury Instr. Civ. § 23:2 (4th ed. 2004). Certainly, discriminatory acts can be so egregious as to constitute outrageous conduct. *See Pearson v. Kancilia*, 70 P.3d 594 (Colo. Ct. App. 2003).  However, "the level of outrageousness required to create liability is extremely high.  Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Id.* at 597. I conclude that this is a circumstance of "mere" insult, and no reasonable jury could conclude that the conduct alleged by the Miales family is so atrocious that it rises to the level of outrageous conduct.  Therefore, summary judgment is appropriate on this claim.

Accordingly, it is ordered:

1. Defendant McDonald's Restaurants of Colorado's motion for summary judgment, filed March 2, 2005 (Docket No. 55), is granted in part.

2. Plaintiffs' second claim for outrageous conduct and intentional infliction of emotional distress is dismissed with prejudice.

3. This case remains pending for trial on Plaintiffs' first claim for discrimination in violation of 42 U.S.C. § 1981.

DATED originally at Denver, Colorado, on March 8, 2006, and amended on June 29, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge